UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

        v.

**MEMORANDUM OPINION
AND ORDER**
Criminal No. 17-298(3) ADM/KMM
Civil No. 18-3224 ADM

Casey Jemar Davis,

        Defendant.

___

Benjamin Bejar, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Casey Jemar Davis, pro se.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Casey Jemar Davis' ("Davis") Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 397] (the "Motion"). For the reasons set forth below, Davis' Motion is denied.

## II. BACKGROUND

On February 27, 2018, Davis entered a plea of guilty [Docket No. 182] to Count I of the Second Superseding Indictment charging him and co-defendants with conspiring to violate 18 U.S.C. § 922(g)(1), the felon in possession of a firearm statute. See Plea Agreement [Docket No. 190] ¶ 1. In the Plea Agreement, Davis admitted the following facts:

    a.    Between at least January 2014 and continuing through at least
          December 2017, the defendant knowingly and intentionally
          conspired with his co-defendants and with others to violate Title

18, United States Code, Section 922(g)(l), which makes it a federal crime to be a felon in possession of a firearm. During the timeframe of the conspiracy, the defendant was an active member of the street gang known as the "HAM Crazy." Some of the primary goals of the HAM Crazy gang are to maintain their power and reputation and to maintain their control of what they consider to be their "gang turf," namely certain parts of the eastside of Saint Paul, Minnesota, against rival Saint Paul gangs, such as the Hit Squad, through the use of gun violence and intimidation.

b. During all or part of the timeframe of the conspiracy, many of the HAM Crazy gang members, including the defendant, were convicted felons or were otherwise legally prohibited from possessing firearms. Specifically, the defendant has a 2014 felony conviction for crime committed for the benefit of a gang.

c. During the timeframe of the conspiracy, the HAM Crazy gang has been in an ongoing gang war with several rival gangs, including the Hit Squad, that has resulted in several gang members on both sides being shot and in some cases killed. The gang warfare includes the use of firearms by HAM Crazy members in shootings of rival gang members and their affiliates and the brandishing of firearms by HAM Crazy members as direct threats of violence and intimidation against rival gang members through social media platforms.

d. Due to the ongoing gang war and the need for firearms to carry out some of the goals of the HAM Crazy gang, HAM Crazy members, including the defendant, conspired to illegally obtain and jointly possess firearms. HAM Crazy members obtained firearms in a variety of ways, including through thefts, trades, and cash exchanges, and HAM Crazy members shared and transferred firearms amongst themselves. HAM Crazy members also attempted to buy, sell, trade, and otherwise obtain firearms using social media platforms.

e. The defendant stipulates and agrees that the firearms listed in the Second Superseding Indictment were manufactured outside the State of Minnesota and therefore previously had traveled in interstate and/or foreign commerce before being in the gang's possession during the timeframe of the conspiracy. The defendant further stipulates and agrees that he knowingly and intentionally

participated in the conspiracy, and that he knew his actions violated the law.

f. The defendant admits and stipulates that in furtherance of the conspiracy, on or about June 23, 2014, he knowingly unlawfully possessed a loaded Iver Johnson, model 57A, .22-caliber revolver, bearing serial number J65322, at a residence in Saint Paul, Minnesota, where several other HAM Crazy members, including some co-defendants, were present for filming a rap video, as set forth in Overt Act 8 of the Second Superseding Indictment. Saint Paul Police responded to the residence on a report of shots being fired and that persons had been shot. As police approached the residence, they observed the defendant on steps attempting to gain access to the residence and drop a white sock over the railing that was later determined to contain the .22-caliber revolver. The defendant stipulates and agrees that he knowingly possessed the firearm; that he knew he did not have a valid permit to legally possess the firearm; that he acted voluntarily; and that he knew his actions violated the law.

g. The defendant further admits and stipulates that in furtherance of the conspiracy, in September 2014, he took part in a rap video, published on social media platform YouTube on or about September 17, 2014, wherein he and other HAM Crazy members, including some of the co-defendants, brandished and pointed firearms at the camera, and other HAM Crazy members passed firearms among one another, as set forth in Overt Act 9 of the Second Superseding Indictment.

h. The defendant further admits and stipulates that in furtherance of the conspiracy, on or about April 25, 2017, he and other HAM Crazy members knowingly jointly possessed a Glock, model 42, .380-caliber semiautomatic pistol, bearing serial number AASH827, and a Taurus, model Millennium G2 PT111, nine-millimeter caliber semiautomatic pistol, bearing serial number TJT75915, with an extended magazine, in a vehicle he was driving in Saint Paul, Minnesota. The .380-caliber pistol was located in a white sock under the front passenger seat, and the nine-millimeter pistol was located in a black sock in the rear center armrest.

i. The defendant admits and agrees that he acted voluntarily during the period of the conspiracy and that he knew his actions during and in furtherance of the conspiracy violated the law.

Id. ¶ 2.

On June 27, 2018, Davis was sentenced to 50 months' imprisonment, a 10 month downward variance from his Guideline Sentence. Sentencing J. [Docket No. 331] at 2. On July 6, 2018, Davis appealed his sentence, challenging the application of the Sentencing Guidelines. Not. of Appeal [Docket No. 344]. On July 20, 2018, however, Davis filed an affidavit informing the Eighth Circuit of his motion to dismiss the appeal after discussing the merits of his appeal with his attorney. See United States v. Davis, No. 18-2487 (8th Cir. July 20, 2018). The Eighth Circuit dismissed the appeal the same day. USCA J. [Docket No. 358].

Davis now moves under § 2255 to vacate his sentence, arguing that he received ineffective assistance of counsel. Davis claims his attorney should have argued the constitutionality of the federal firearm laws Davis admitted to violating. Pro Se Mem. Supp. Mot. Vacate ("Mem.") [Docket No. 398] at 2–25. Davis does not argue that he is innocent. Rather, he argues that his attorney failed to object in pretrial motions to the "lack of constitutional power of the Government to prosecute Petitioner." Id. at 2. Additionally, Davis argues his attorney did not "object to the enforcement of the federal criminal laws within the soverrign [sic] territorial boundaries of the State." Id. at 12. And finally, Davis argues his attorney failed to "object to the district court's lack of capability to be vested with 'judicial Power' over any criminal case." Id. at 20. Davis requests the Court vacate his sentence "on jurisdictional principles." Id. at 25.

Plaintiff United States of America (the "Government") argues the § 2255 Motion is procedurally barred and substantively meritless.

## III. DISCUSSION

28 U.S.C. § 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. See United States v. Addonizio, 442 U.S. 178, 185 (1979). Relief is reserved for violations of constitutional rights and for a narrow range of injuries which were outside a direct appeal and which, if untreated, would result in a miscarriage of justice. See United States v. Timmreck, 441 U.S. 780, 783 (1979). "While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'" Voytik v. United States, 778 F.2d 1306, 1308 (8th Cir. 1985) (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

### A. Procedural Bar

The Government argues Davis procedurally defaulted on his claims by failing to raise them on direct appeal. A petitioner may raise a constitutional issue in a § 2255 motion that he did not raise on direct appeal, but he can only do so if he demonstrates: "(1) cause for the default and actual prejudice or (2) actual innocence." United States v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001). Davis does not argue actual innocence. Davis argues that his claims are not procedurally barred because his attorney provided ineffective assistance of counsel by failing to research the constitutional claims he is now raising. This argument fails, as explained below, because Davis has not shown his attorney's performance caused his default of his direct appeal. Therefore, the claims Davis raises in his § 2255 Motion are procedurally barred. Even if the claims were not procedurally barred, they would fail on the merits.

**B. Constitutional Power to Prosecute**

Davis challenges the constitutionality of 18 U.S.C. § 922(g) under the Commerce Clause. Davis argues that the Constitution does not authorize the Government to prosecute felon-in-possession crimes. The Eighth Circuit Court of Appeals has consistently held that 18 U.S.C. § 922(g)(1) is constitutional under the Commerce Clause and the Second Amendment. <u>United States v. Joos</u>, 638 F.3d 581, 586 (8th Cir. 2011); <u>see also</u> <u>United States v. Leathers</u>, 354 F.3d 955, 959 (8th Cir. 2004) (discussing long-standing precedent).

Davis next challenges federal court jurisdiction under the Tenth Amendment. Davis' argument fails because a Tenth Amendment challenge to a statute "necessarily" fails where the statute is a valid exercise of Congress' commerce power. <u>United States v. Lewis</u>, 236 F.3d 948, 950 (8th Cir. 2001) (citing <u>United States v. Myers</u>, No. 98-2560, 1999 U.S. App. LEXIS 14658, at *1 (8th Cir. 1999)). Davis' final claim is that the district court has no "judicial power" over any criminal case. Federal district courts clearly have subject matter jurisdiction to consider violations of 18 U.S.C. § 922(g)(1). <u>See</u> <u>United States v. Schmidt</u>, 571 F.3d 743, 746 (8th Cir. 2009) (18 U.S.C. § 3231 imparts jurisdiction to district courts of the United States over all offenses against the laws of the United States).

**C. Ineffective Assistance of Counsel**

All of Davis' claims are procedurally barred, but Davis argues his default is excused because he received ineffective assistance of counsel. Davis argues that his attorney was ineffective because the attorney did not research and raise the constitutionality of the federal laws Davis has admitted violating.

In Strickland v. Washington, the Supreme Court set forth the standard for claims of ineffective assistance of counsel. 466 U.S. 668 (1984). To properly demonstrate a claim, a defendant must show that his attorney's representation fell below an objective standard of reasonableness. Id. at 687-88. The defendant must also demonstrate that a reasonable probability exists that but for the attorney's errors, the result of the proceeding would have been different. Id. at 694. "[W]hen reviewing an ineffective-assistance-of-counsel claim, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Woods v. Donald, 135 S. Ct. 1372, 1375 (2015) (quotations omitted).

Davis has not offered evidence that his attorney's representation fell below the objective standard of reasonableness. Davis' attorney represented him through his plea and in his ultimate decision not to file a direct appeal. The record shows that Davis filed a notice of appeal and then later withdrew the appeal by an affidavit which explicitly acknowledged Davis discussed his appeal with his attorney. The Eighth Circuit has made clear that "absent contrary evidence, we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (internal quotation omitted). Davis has offered no evidence to the contrary. Finally, the result of the proceedings would not have been different if Davis' attorney had raised the constitutionality arguments now raised by Davis pro se, because the arguments lack merit. Counsel cannot be deemed ineffective for failing to perform a futile act or failing to make a futile objection.

### IV. CERTIFICATE OF APPEALABILITY

The Court will not issue a certificate of appealability. A court may grant a certificate of appealability only where the defendant has made a substantial showing of the denial of a

7

constitutional right.  28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 523 (8th Cir. 1997).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  The Court finds it unlikely that another court would decide the issues raised in this Motion differently, or that any of the issues raised in the Motion would be debatable among reasonable jurists.

## V.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Casey Jemar Davis' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 397] is **DENIED**.  A certificate of appealability shall not issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 15, 2019.